UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Virginia C. Munoz,<br>    Plaintiff | \* |
| | \* |
| v. | |
| | \*    Civil No. 1:11-CV-00151 LY |
| Seton Heathcare d/b/a<br>Seton Health Network, | \* |
| Seton Family of Hospitals, |     JURY DEMANDED |
| Seton Northwest Hospital, and | \* |
| Seton Southwest Hospital, and<br>Ascension Health, | |
|     Defendants | \* |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

1. VIRGINIA C. MUNOZ, Plaintiff, comes amending for the second time her "Plaintiff's Original Petition, Jury Demand, and Request for Disclosure", filed originally in the 53rd Judicial District Court of Travis County, Texas, as Cause Number D-1-GN-11-000226, having had a cause of action pursuant to the Texas Workers' Compensation Act remanded back to that court; amending for the first time her First Amended Complaint, within the parties' agreed time for amending pleadings pursuant to the agreed scheduling order on file in this case; and continuing her complaint in this Court against Seton Healthcare d/b/a Seton Health Network, Seton Family of Hospitals, Seton Northwest Hospital, and Seton Southwest Hospital, and Ascension Health, pursuant to an EEOC Right to Sue Notice issued on January 17, 2012, she would respectfully show the Court:

**I. NATURE OF THE CASE**

2. This action involves violations of federal and state anti-discrimination and anti-retaliation statutes by Plaintiff's former employer(s), including the Americans With

1

Disabilities Act, as amended ("ADA-ADAA"); Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended; the Age Discrimination in Employment Act of 1967 ("ADEA"); the Texas Commission on Human Rights Act, Texas Labor Code Chapter 21 ("TCHRA"); and, Family Medical Leave Act ("FMLA"). Plaintiff seeks compensatory, pecuniary and non-pecuniary damages; liquidated damages; punitive damages; and her attorney's fees, court costs, and pre- and post-judgment interest at the highest rate allowed by law.

## II.  PARTIES

3.  Plaintiff, Virginia C. Munoz, is an individual, a U.S. citizen, a resident of Travis County, Texas, and a former employee who worked at Defendants' Seton Northwest Hospital and Seton Southwest Hospital locations.

4.  Defendant, Seton Healthcare d/b/a Seton Health Network, Seton Family of Hospitals, Seton Northwest Hospital, and Seton Southwest Hospital ("Defendant Seton") is a legal entity formed as a non-profit corporation in its home state of Texas, and doing business in Travis County, Texas, at various locations, including but not limited to, its principal place of business at 1345 Philomena Street, Austin, Texas 78723-3185. Defendant Seton Healthcare can be served with process by serving its registered agent Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. As of the filing of the First Amended Complaint, this Defendant has been served and has answered the Original Petition.

5.  Defendant, Ascension Health ("Defendant Ascension") is a legal entity incorporated under the laws of Missouri, and maintains its principal place of business in St. Louis, Missouri.  Defendant Ascension can be served with process by serving its

registered agent Charles Barnett, 1201 W. 38th St., Austin, Texas, 78705-1056.  As of the filing of the First Amended Complaint, this Defendant has been served and has answered the Original Petition.

6.  Plaintiff would show that Defendant Ascension is a national health system and the parent corporation serving as the corporate member or *de facto* supervisor of certain healthcare organizations, including Defendant Seton in Texas.  Subject to further discovery, Plaintiff would show that Defendant Ascension and Defendant Seton acted in concert, as co-employers, joint venturers, contractual or *de facto* partners, vendor-vendee, agent-principal, or alter egos, in connection with Plaintiff's employment.  For the purposes of this petition, Plaintiff refers to Seton and Ascension collectively as "Defendant."

### III.   JURISDICTION AND VENUE

6.  This Court has jurisdiction over this matter because the amount in controversy exceeds the minimum jurisdictional limits of this Court, jurisdiction is conferred on this Court by virtue of the federal statutes violated by Defendant, and this Court has supplemental jurisdiction over the state statutes pleaded.  See, 28 U.S.C. 1331 (federal question jurisdiction) and 28 U.S.C. 1367 (supplemental jurisdiction). Plaintiff has exhausted all administrative remedies and met all jurisdictional requirements for filing this lawsuit pursuant the ADA-ADAA, Title VII, ADEA, TCHRA, and FMLA.

7.  Venue is proper in the Western District of Texas, Austin Division, because all or part of the occurrences giving rise to the causes of action occurred therein.

### IV.   BACKGROUND

**A. Statutory Prerequisites**

8. At all relevant times, Defendant was an employer or covered employer as defined and within the meaning of the ADA-ADAA, Title VII, ADEA, TCHRA, and FMLA and employed over 500 employees, as defined by the statutes. Defendant is subject to jurisdiction and culpability pursuant to the referenced state and federal statutes. See, Section I., Paragraph 2, Pages 1 – 2, *et seq*, herein.

9. At all relevant times, Plaintiff was an employee or eligible employee as defined and within the meaning of the ADA-ADAA, Title VII, ADEA, TCHRA, and FMLA and qualifies for protection thereunder.

10. Plaintiff is a member of a protected class of persons under the ADA-ADAA, Title VII, ADEA, and TCHRA; namely, Hispanic, over the age of forty (60), and having a disability or being regarded as having a disability.

11. Further, Plaintiff is protected by the anti-retaliation provisions of the ADA-ADAA, Title VII, ADEA, and TCHRA in that Plaintiff filed a charge of discrimination in August of 2009, amended it in October of 2009, and participated in the investigation by the Equal Employment Opportunity Commission ("EEOC") until she requested her Right to Sue, at which time the EEOC closed its investigation and issued Plaintiff's Right to Sue Notice on October 28, 2010. Plaintiff is further protected by the anti-retaliation provisions of the FMLA.

12. Plaintiff has a disability as defined by the ADA-ADAA and TCHRA, and could perform her clerical/administrative duties with or without a reasonable accommodation.

13. Plaintiff timely filed this lawsuit for violations of the ADA-ADAA, Title VII, ADEA, and TCHRA pursuant to the Right to Sue Notice issued by the EEOC on October

28, 2010, and received by Plaintiff thereafter, and Plaintiff timely amended this lawsuit pursuant to the Right to Sue Notice issued by the EEOC on January 17, 2012, and received by Plaintiff thereafter.  Plaintiff timely filed this lawsuit pursuant to the FMLA.

### B. Factual Background Common to All Causes of Action

14. Plaintiff commenced her employment with Defendant on or about April 26, 2004, as Patient Access Representative, a clerical/administrative position, at Seton Northwest Hospital.

15. On or about July, 2005, Plaintiff voluntarily transferred to an open clerical/administrative position at Seton Southwest Hospital in the same job classification, Patient Access Representative.

16. In 2008, Defendant provided a reasonable accommodation for Plaintiff's Rheumatoid Arthritis/auto-immune disease by placing her into a position in Outpatient Services that, among other things, allowed Plaintiff to maintain a sitting position in a private office as she carried out her duties.

17. In 2009, Plaintiff requested intermittent, hourly FMLA leave to attend appointments for regular, periodic infusions of medication required for the treatment, control, and management of her disability arising from her Rheumatoid Arthritis/auto-immune disease and its related conditions.

18. Thereafter, in August 2009, Defendant refused Plaintiff access to annual re-certification training for Birth Certificate processing.

19. Defendant selected other Patient Access Representatives, some from other departments, who were non-disabled, non-Hispanic, significantly younger (under the age of 40) co-workers, to attend the birth certificate training.

20. Plaintiff was able to perform birth certificate processing without accommodation and without being transferred or re-assigned from her department, Out Patient Services.

21. On or about August 14 and 17, 2009, Defendant withdrew Plaintiff's accommodation position by involuntarily transferring her to a non-accommodated position in the Emergency Department.

22. Thereafter, Defendant required Plaintiff to exercise new duties incompatible with her disability, including, among other things, mobility activities that exceeded Plaintiff's safe range for physical capacity, such activities to be performed day in and day out.

23. The involuntary transfer to the Emergency Department also subjected Plaintiff to an exceptionally high-risk of exposure to communicable diseases and transferrable infections that were potentially lethal to Plaintiff under her medical circumstances. Plaintiff's infusion therapy left her vulnerable, with a compromised immune system.

24. Defendant, a healthcare service provider, knew that Plaintiff was receiving regular infusions of medications during her exercise of intermittent FMLA and that it was an unreasonable risk to expose Plaintiff to the flow of Emergency Room patients.

25. Defendant's Emergency Department probably has the highest risk of exposure to communicable diseases and transferrable infections than any other department in Defendant's hospital facilities.

26. When Plaintiff raised concern about the involuntary change in duties, Defendant ordered Plaintiff to either take full-time FMLA leave or take the new, non-

accommodated position and suspended Plaintiff from work for approximately nine (9) days. Plaintiff and her physicians notified Defendant to enter into the interactive process to reach a reasonable accommodation, which was refused and denied.

27. Plaintiff filed a charge of discrimination against Defendant on August 25, 2009, seeking protection under anti-discrimination statutes based upon failure to make a reasonable accommodation and on disability, national origin (Hispanic), and age compared to others who were receiving more favorable treatment -- received the training which was denied Plaintiff, received Plaintiff's accommodated position in Out Patient Services, which was denied Plaintiff, and received suitable shift work, among other things.

28. Beginning in August and continuing thereafter without interruption, Defendant denied and refused Plaintiff's and her physicians' requests for reasonable accommodations and modifications.

29. Defendant harassed Plaintiff by, among other things, requiring that she remain in the new non-accommodated position, work exclusively in a high-risk area, wear a face mask to perform her clerical duties, perform a job that had previously been two jobs performed by two employees, and continually walk and get up and down.

30. Plaintiff amended her 2009 charge of discrimination on October 30, 2009, to include retaliation based, among other things, on a threatening meeting instigated by Mary Faria and Lonnie Seek.

31. Plaintiff alleges and asserts that at all relevant times, Lonnie Seek, Plaintiff's manager, was taking adverse employment actions against Plaintiff by either acting upon his own intentions, motives, and authority or as the cat's paw of Mary Faria and/or

unknown others in upper management as well as in conspiracy with certain HR and/or Employee Health personnel.

32. Defendant denied and refused Plaintiff's requests to be accommodated with, or otherwise placed into, open positions in Outpatient Services that matched the same job classification, level, and training met by Plaintiff and for which she was qualified, with or without accommodation.

33. Persons who did not have a disability, were not Hispanic, and/or were significantly younger (under 40), were allowed access to those positions that Plaintiff had requested.

34. During the course of her employment, Plaintiff received positive performance evaluations and feedback for her work as a Patient Access Representative, at least until she sought certain protections afforded by law. Thereafter, she was regularly subjected to nitpicking, interference with her duties, and meaningless, unproductive, nonsensical, or mean-spirited employment decisions severely, negatively affecting the terms, conditions, and privileges of her employment.

35. At all relevant times, Plaintiff was qualified, with or without accommodation, for the positions she held or sought. Nevertheless, Defendant changed Plaintiff's job duties to impose tasks and conditions which were medically ill-advised and outside of Plaintiff's restrictions. As a result, Plaintiff's health deteriorated.

36. On or about March 3, 2010, due to exacerbation of Plaintiff's disability and Defendant's refusal to reasonably accommodate her condition, Plaintiff became totally disabled from the non-accommodated position in the Emergency Department. Plaintiff had no alternative but to seek protections afforded by law.

37. Plaintiff sought and obtained full-time FMLA leave based upon her serious medical condition of Rheumatoid Arthritis/autoimmune disease and its related conditions.

38. In June, 2010, while she was on FMLA leave, Plaintiff requested to be placed into the next available Patient Access Representative open position in Out Patient Services as a reasonable accommodation for her disability.

39. In October 2010, Plaintiff's EEOC charge was still under investigation even though it had been filed in August, 2009, and amended in October, 2009. Plaintiff requested a Right to Sue Notice from the EEOC, and, on or about October 29, 2010, Defendant received notice that Plaintiff's EEOC investigation was closed and Plaintiff had been issued a Right to Sue.

40. Defendants terminated Plaintiff's employment soon after Plaintiff requested a Right to Sue. Based upon best information and belief, Defendant terminated Plaintiff's employment on or about November 1, 2010, effective in October, 2010.

41. On or about December 1, 2010, Plaintiff discovered through inquiry that Defendant had terminated her employment.

42. Such acts and omissions by Defendant have proximately caused Plaintiff legal damages, actual, compensatory, consequential, direct and indirect, including but not limited to, past and future lost wages and employee benefits, damage to reputation, lost earning capacity, financial hardship, medical expenses, pain and suffering, mental anguish and emotional distress including sleeplessness, worry, anxiety, depression, and inconvenience, among other things, and worsening of Plaintiff's physical symptoms in connection with her Rheumatoid Arthritis/autoimmune disease. Plaintiff has had to retain

the services of attorneys and pay them reasonable and necessary attorney's fees and legal expenses, and she has incurred court costs.

The following causes of action are pled cumulatively or alternatively as allowed:

## V.

## DISABILITY DISCRIMINATION

43. These causes involve Defendant's discrimination and retaliation against Plaintiff in violation of the ADA-ADAA and TCHRA. Plaintiff incorporates the allegations in Section IV herein by reference as if fully set forth at length.

44. Plaintiff alleges that Defendant's acts and omissions were motivated, in whole or in part, by Plaintiff's disability and/or Plaintiff's filing and/or participating in the investigation of a charge of discrimination, including but not limited to the following:

45. Defendant failed and refused to enter into the interactive process with Plaintiff in connection with Plaintiff's requests for a reasonable accommodation.

46. Defendant failed and refused to provide a reasonable accommodation of Plaintiff's physical impairments related to her disability.

47. Defendant failed and refused to modify Plaintiff's position so as to provide a reasonable accommodation of Plaintiff's physical impairments related to her disability.

48. Defendant failed and refused to retain Plaintiff in a position that was an accommodation.

49. Defendant failed and refused to place Plaintiff in a position and/or location that, by its nature and requirements, would constitute a reasonable accommodation.

50. Defendant engaged in verbal harassment, intimidation, and humiliation of Plaintiff, and non-disabled persons or persons who had not filed a discrimination charge were not subjected to such treatment.

51. Defendant transferred Plaintiff to an undesirable position.

52. Defendant allowed non-disabled, similarly situated co-workers access to training and open positions sought by Plaintiff for which Plaintiff was as qualified or more qualified.

53. Defendant engaged in a course of harassment that changed the terms, conditions, or privileges of Plaintiff's employment and relate to Plaintiff's disability.

54. Defendant terminated Plaintiff without notice while she was on FMLA medical leave. motivated, in whole or in part, because of Plaintiff's disability or perceived disability.

55. At all relevant times, Plaintiff was qualified for her positions and the positions sought or more qualified than similarly situated co-workers who were treated more favorably than Plaintiff and did not have a disability.

56. At all relevant times, Plaintiff could perform the essential functions of her job with or without reasonable accommodations.

57. Plaintiff has suffered legal damages described in Section IV above, for which Plaintiff pleads for recovery.  Further, Plaintiff seeks punitive damages and alleges that such misconduct by Defendant was intentional, willful, and/or malicious to such a degree that Plaintiff should be awarded punitive damages from Defendant in an amount that will discourage Defendant from repeating such misconduct in the future against others.

Further, Plaintiff seeks her reasonable and necessary attorneys' fees and legal expenses, expert witness fees, costs of court, and pre- and post-judgment interest.

## VI.

## ETHNICITY / NATIONAL ORIGIN DISCRIMINATION

58. Pleading further, and in the alternative, these causes involve Defendant's discrimination and retaliation against Plaintiff in violation of the Title VII and TCHRA. Plaintiff incorporates the allegations in Section IV herein by reference as if fully set forth at length.

59. Plaintiff alleges that Defendant's acts and omissions were motivated, in whole or in part, by Plaintiff's ethnicity/national origin, Hispanic, and/or Plaintiff's filing and/or participating in the investigation of a charge of discrimination, including but not limited to the following:

60. Defendant engaged in verbal harassment, intimidation, and humiliation of Plaintiff, and persons who are not Hispanic or had not filed a charge of discrimination were not subjected to such treatment.

61. Defendant transferred Plaintiff to an undesirable position.

62. Defendant allowed Caucasian non-Hispanic similarly situated co-workers access to training and open positions sought by Plaintiff for which Plaintiff was as qualified or more qualified.

63. Defendant engaged in a course of harassment that changed the terms, conditions, or privileges of Plaintiff's employment and relate to Plaintiff's ethnicity/national origin.

64. Defendant terminated Plaintiff without notice while she was on FMLA medical leave.

65. At all relevant times, Plaintiff was qualified for her positions and the positions sought or more qualified than similarly situated co-workers who were treated more favorably than Plaintiff.

66. Plaintiff has suffered legal damages described in Section IV above, for which Plaintiff pleads for recovery. Further, Plaintiff seeks punitive damages and alleges that such misconduct by Defendant was intentional, willful, and/or malicious to such a degree that Plaintiff should be awarded punitive damages from Defendant in an amount that will discourage Defendant from repeating such misconduct in the future against others. Further, Plaintiff seeks her reasonable and necessary attorneys' fees and legal expenses, expert witness fees, costs of court, and pre- and post-judgment interest.

## VII.

## AGE DISCRIMINATION

67. Pleading further, and in the alternative, these causes involve Defendant's discrimination and retaliation against Plaintiff in violation of the ADEA and TCHRA. Plaintiff incorporates the allegations in Section IV herein by reference as if fully set forth at length.

68. Plaintiff is 62 years of age at the time this lawsuit is filed. At all relevant times, Plaintiff was significantly over 40 years of age.

69. Plaintiff alleges that Defendant's acts and omissions were motivated, in whole or in part, by Plaintiff's age and/or Plaintiff's filing and/or participating in the investigation of a charge of discrimination, including but not limited to the following:

70. Defendant engaged in verbal harassment, intimidation, and humiliation of Plaintiff, and significantly younger or employees who under age 40 or persons who had not filed a charge of discrimination were not subjected to such treatment.

71. Defendant transferred Plaintiff to an undesirable position.

72. Defendant allowed significantly younger (under 40), similarly situated co-workers access to training and open positions sought by Plaintiff for which Plaintiff was as qualified or more qualified.

73. Defendant engaged in a course of harassment that changed the terms, conditions, or privileges of Plaintiff's employment and relate to Plaintiff's age.

74. Defendant terminated Plaintiff without notice while she was on FMLA medical leave.

75. At all relevant times, Plaintiff was qualified for her positions and the positions sought or more qualified than similarly situated co-workers who were treated more favorably than Plaintiff.

76. Plaintiff has suffered legal damages described in Section IV above, for which Plaintiff pleads for recovery, both direct and proximate and consequential. Further, Plaintiff seeks liquidated or punitive damages and alleges that such misconduct by Defendant was intentional, willful, and/or malicious to such a degree that Plaintiff should be awarded liquidated and/or punitive damages from Defendant as allowed by statute or in an amount that will discourage Defendant from repeating such misconduct in the future against others. Further, Plaintiff seeks her reasonable and necessary attorneys' fees and legal expenses, expert witness fees, costs of court, and pre- and post-judgment interest.

## VIII.

## UNLAWFUL FMLA RETALIATION

77. Pleading further, and in the alternative, this cause of action involves violation of the anti-retaliation provision of the Family Medical Leave Act ("FMLA"). Plaintiff incorporates the allegations in Section IV herein by reference as if fully set forth at length.

78. During all relevant times, Plaintiff was an eligible employee pursuant to the FMLA and Defendant was a covered employer.

79. Defendant discharged or otherwise discriminated against Plaintiff for using FMLA leave. Defendant interfered with, restrained, or denied the exercise of or the attempt to exercise Plaintiff's rights under the FMLA.

80. Plaintiff alleges that Defendant's acts and omissions were motivated by retaliation in connection with Plaintiff's exercise and attempts to exercise her FMLA rights, including but not limited to, the following:

81. Defendant engaged in verbal harassment, intimidation, and humiliation of Plaintiff after she requested intermittent FMLA leave.

82. Defendant transferred Plaintiff to an undesirable position.

83. Defendant allowed similarly situated co-workers who were not engaged in intermittent FMLA leave, access to training and open positions sought by Plaintiff for which Plaintiff was as qualified or more qualified.

84. Defendant engaged in a course of harassment that changed the terms, conditions, or privileges of Plaintiff's employment and relate to Plaintiff's request for and use of FMLA leave.

85. Defendant interfered with Plaintiff's employment by ordering Plaintiff to accept an unsuitable, unsafe position or take full-time FMLA leave. Defendant thereby intimidated and harassed Plaintiff and indirectly denied or attempted to deny Plaintiff's exercise of her right to intermittent FMLA leave.

86. Defendant terminated Plaintiff. Defendant terminated Plaintiff's emloyment without notice while Plaintiff was on FMLA medical leave.

87. At all relevant times, Plaintiff was qualified for her positions and the positions sought or more qualified than similarly situated co-workers who were treated more favorably than Plaintiff and had not requested FMLA as Plaintiff had.

88. Plaintiff has suffered legal damages described in Section IV above and actual monetary losses as a result of Defendant's violations, for which Plaintiff pleads for recovery. Further, Plaintiff seeks liquidated damages and alleges that such misconduct by Defendant was intentional, willful, and/or malicious to such a degree that Plaintiff should be awarded liquidated damages from Defendant as allowed by statute or in an amount allowed by statutes and/or that will discourage Defendant from repeating such misconduct in the future against others. Further, Plaintiff seeks her reasonable and necessary attorneys' fees and legal expenses, expert witness fees, costs of court, and pre- and post-judgment interest.

## IX.

## UNLAWFUL DISCRIMINATORY RETALIATION

89. Pleading further, and in the alternative by pleading separately -- these causes involve Defendant's discriminatory retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, the ADEA, the TCHRA, and the ADA-ADAA,

based upon disability and/or perceived disability, . Plaintiff incorporates the allegations in Section IV herein by reference as if fully set forth at length.

90. Defendants, acting singularly or in concert, discriminated against Plaintiff, as described hereinabove in this Second Amended Complaint, and/or terminated Plaintiff because Plaintiff opposed Defendants' discriminatory practices, made or filed a charge of discrimination, filed a complaint, or testified, assisted, or participated in any manner in a discrimination investigation, proceeding, or hearing under Title VII, the ADEA, the TCHRA, and/or the ADA or ADAA (based upon disability or perceived disability).

91. Defendants engaged in the discriminatory practices against Plaintiff, described in Section IV hereinabove, when they did because Plaintiff had engaged in said protected activities; in particular, Defendants refused Plaintiff's request to place her into a suitable and/or accommodated position in June – October, 2010; and/or terminated Plaintiff from her employment. Plaintiff further alleges a reasonable employee would have found the challenged action(s) materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

92. As a result of Defendants' discriminatory retaliation, directly or indirectly, actual or consequential, Plaintiff has suffered legal damages described in Section IV above, for which Plaintiff pleads for recovery. Further, Plaintiff seeks punitive damages and alleges that such misconduct by Defendant was intentional, willful, and/or malicious to such a degree that Plaintiff should be awarded punitive damages from Defendant in an amount that will discourage Defendant from repeating such misconduct in the future

against others. Further, Plaintiff seeks her reasonable and necessary attorneys' fees and legal expenses, expert witness fees, costs of court, and pre- and post-judgment interest.

## X.

## PUNITIVE DAMAGES

93. As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, which damaged her reputation and caused her bodily injury, pain and suffering, and/or mental anguish, Plaintiff is entitled to exemplary damages in excess of the minimum jurisdictional limits of this Court, in an amount that would discourage these Defendants from committing such torts and statutory violations in the future.

## XI.

## MENTAL ANGUISH

94. As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff suffered and will suffer past and present severe mental anguish, for which she pleads to recover at trial. The damages for said mental anguish exceed the minimum jurisdictional limits of this Court.

## XII.

## ATTORNEY'S FEES

95. As a result of the acts and omissions of Defendants, jointly or severely, singly or collectively, as described hereinabove, Plaintiff had to retain the services of a duly licensed attorney to protect her legal rights and obtain her legal remedies. Plaintiff has incurred reasonable and necessary attorney's fees and expenses in connection therewith. Plaintiff further anticipates incurring reasonable and necessary paralegal fees and expert

fees in the prosecution of his case. Plaintiff asks the Court for an award of such reasonable and necessary fees.

## XIII.

## CONDITIONS PRECEDENT

96. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## XIV.

## JURY DEMAND

97. Plaintiff demands a jury trial.

## XV.

## PRAYER FOR RELIEF

98. WHEREFORE, PREMISES CONSIDERED, Plaintiff, Virginia C. Munoz, respectfully prays that, upon final hearing of the cause, judgment be entered for the Plaintiff as follows:

(1) That Plaintiff recover judgment against Defendants, jointly and severally, actual and consequential damages, pecuniary and non-pecuniary, as pled, in a sum within the jurisdictional limits of the Court.

(2) That Plaintiff recover prejudgment interest as provided by law.

(3) That Plaintiff recover a suitable award for reasonable and necessary attorney's fees and litigation expenses, including but not limited to expert witness fees and other expenses of suit.

(4) That Plaintiff recover an award for liquidated damages and exemplary damages in sums determined by the trier of fact.

(5) That Plaintiff recover post-judgment interest as provided by law.

(6) That Plaintiff recover costs of suit.

(7) That Plaintiff recover such other and further relief, in law or equity, to which Plaintiff may be justly entitled.

Date:  March 9, 2012

                                             Respectfully submitted,

                                             Law Offices of Lin L. Blansit

                                             By:  /s/ Lin L. Blansit
                                                  Lin L. Blansit
                                                  Texas State Bar No. 02458500
                                           1411 West Avenue, Suite 200
                                           Austin, Texas 78701-1537
                                           Tel: (512) 499-0900
                                                Fax: (512) 474-5594
                                           lblansit@1411west.com

                                           ATTORNEYS FOR VIRGINA MUNOZ, PLAINTIFF

CERTIFICATE OF SERVICE

       This is to certify that the above and foregoing Plaintiff's Second Amended Complaint was served on the following attorneys of record in accordance with the Federal Rules of Civil Procedure through the Clerk of Court using the CM/EFC system on this 9th day of March, 2012:

Thomas A. Nesbitt                        Via Electronically Through the U.S.Clerk
DeShazo & Nesbitt LLP
100 Congress Avenue, Suite 800
Austin, Texas 78701
FAX # 617-5563
tnesbitt@deshazonesbitt.com
Attorneys for Defendants

                                           /s/   Lin Blansit
                                           Lin Blansit