**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **VIRGINIA C. MUNOZ** | § | |
| | § | |
| **V.** | § | **A-11-CA-151-LY** |
| | § | |
| **SETON HEALTHCARE D/B/A** | § | |
| **SETON HEALTH NETWORK,** | § | |
| **SETON FAMILY OF HOSPITALS,** | § | |
| **SETON NORTHWEST HOSPITAL,** | § | |
| **SETON SOUTHWEST HOSPITAL, AND** | § | |
| **ASCENSION HEALTH** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
          UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Motion for Summary Judgment (Dkt. # 57); Defendants'

Motion for Summary Judgment, or in the Alternative to Deny Leave to File or to Strike Second

Amended Petition or in the Alternative to Grant Summary Judgment for Defendants (Dkt. # 70);

Plaintiff's Response and Cross-Motion for Summary Judgment (Dkt. # 73); and the Parties' various

Response and Reply briefs.

The undersigned submits this Report and Recommendation to the United States District

Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the

United States District Court for the Western District of Texas, Local Rules for the Assignment of

Duties to United States Magistrate Judges

## I.     Factual Background

In April 2004, Seton Health Care d/b/a Seton Health Network ("Seton") hired Virginia C.

Munoz ("Munoz"), a 60 year-old[1] Hispanic female, as a Patient Access Representative ("PAR"), a

---

[1]Munoz was 60 years-old, at the time she filed this lawsuit.

clerical/administrative position involving registering patients, verifying insurance, collecting co-pays, etc.  Munoz was assigned to several different departments as a PAR during her employment with Seton.  Initially, Munoz was assigned to Seton Northwest Hospital and was later transferred to Seton Southwest hospital on July 3, 2005, where she worked as a PAR in the ER.

On January 15, 2006, Munoz was transferred to the Sports Medicine department of Seton Southwest.  During her six month period working in Sports Medicine, Munoz also worked in the ER and Outpatient Services in order to cover for other employees or to handle overflow.  Munoz soon began to experience problems with her supervisor, Gladys Nicholls.  Ms. Nicholls complained that Munoz was rude to other employees, deleted information on other employee's calendars, failed to lock the front door correctly and lost files.  According to Munoz, Ms. Nicholls was "just out to fire me" because "she didn't have the budget to keep me" and therefore was falsely accusing Munoz of poor performance.  Munoz Dep., 60:22 – 61:12.

In 2006, Munoz filed an EEOC charge of discrimination alleging discrimination by Gladys Nicholls and requested a transfer to get away from Gladys Nicholls.  Seton granted Munoz's transfer request and was reassigned in June 2006 to Seton Southwest and the department of Outpatient Services/Admissions.  During her assignment to Outpatient Services, Munoz worked in the ER three to four times per week.

Although it is unclear from the record when Munoz developed her rheumatoid arthritis/auto-immune disease, Munoz alleges that in 2008 she requested and was granted a reasonable accommodation for her disease "by placing her into a position in Outpatient Services that, among other things, allowed Plaintiff to maintain a sitting position in a private office as she carried out her duties."  Plaintiff's Second Amended Complaint at ¶ 16.  Munoz further alleges that in 2009, she requested and was granted intermittent, hourly FMLA leave to attend appointments for regular,

2

periodic infusions of medication required for the treatment of her rheumatoid arthritis/auto-immune disease.

Munoz alleges that several months after making such requests, Seton "refused Plaintiff access" to training for birth certificate processing. Complaint at ¶ 18.  Munoz alleges that she also received negative performance reviews and complaints about her job performance.  On August 14, 2009, Munoz was transferred from her PAR position in Outpatient Services to a PAR position in the ER.   Munoz contends that her transfer to the ER "required Plaintiff to exercise new duties incompatible with her disability, including, among other things, mobility activities that exceeded Plaintiff's safe range for physical capacity." Complaint at ¶ 22.  In addition, Munoz contends that the job transfer subjected her to "high-risk exposure to diseases that were potentially lethal to Plaintiff," a risk she contends was known to Seton since they were aware that her infusion therapy treatments caused her to have a compromised immune system.  Complaint at ¶ 23.

Munoz contends that when she raised her concerns regarding the job transfer, Seton suspended her from work for approximately nine days.  Munoz alleges that her reasonable request to be transferred to a position outside of the ER was denied and that she was forced to remain in the "high risk" ER.

Munoz alleges, as a result of the exacerbation of her disability and Seton's refusal to reasonably accommodate her condition, she became totally disabled from her job and took full-time FMLA leave on February 28, 2010.  On May 31, 2010, Seton informed Munoz that her twelve weeks of FMLA leave had expired, but told her that she was free to apply for an additional six month regular leave of absence.  However, Munoz failed to apply for the leave of absence and failed to ever return to work.   In October, 2010, Munoz was officially administratively terminated from her position.

## II.  Procedural Background

On January 28, 2011, Munoz filed this action in the 53rd Judicial District Court of Travis County, Texas on, against Seton Healthcare d/b/a Seton Health Network, Seton Family of Hospitals, Seton Northwest Hospital, Seton Southwest Hospital and Ascension Health[2] ("Seton" or "Defendants").  Munoz's Petition alleges causes of action for disability discrimination under the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"), ethnicity/national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the TCHRA, age discrimination under the Age Discrimination in Employment Act ("ADEA") and the TCHRA, and violations of the anti-retaliation provisions of the Family Medical Leave Act ("FMLA").  Munoz's Petition also alleges a cause of action for violation of the anti-retaliation provisions of the Texas Worker's Compensation laws, codified in chapters 411, 414 and 415 of the Texas Labor Code.

On February 25, 2011, Defendants removed this case to federal court pursuant to 28 U.S.C. § 1331.  Thereafter, Munoz filed a Motion to Remand to state court arguing that removal of the case was improper because she had asserted claims arising under Texas workers' compensation law.  Defendants objected to the remand, arguing that removal was proper, but alternatively arguing that the court should sever her claims under Texas law and remand those claims to state court.  The District Court agreed, severing and remanding only Munoz's state workers compensation claims and maintained jurisdiction over the remaining claims.  See Order on Report and Recommendation, May 26, 2011(Dkt. # 13).

After the parties entered into a Scheduling Order and Munoz filed two Amended Complaints, Munoz's attorney filed a Motion to Withdraw from the case, which the District Court granted on

---

[2] Munoz alleges that Ascension Health serves as the corporate member of Seton Healthcare and acted in concert as her co-employer.

May 15, 2012.  See Dkt. # 36.  The Court entered an Amended Scheduling Order on June 12, 2012, ordering that discovery would be due by September 28, 2012,  amended pleadings would be due by March 30, 2012, dispositive motions would be due by October 12, 2012 and that the final pretrial conference would be held on April 26, 2013.  On June 12, 2012, the District Court referred this case to the Magistrate Court for resolution of all pending and future discovery motions and nondispositive motions, and for report and recommendation on all pending and future dispositive motions.

On October 12, 2012, Defendants filed their Motion for Summary Judgment (Dkt. # 57), arguing that all of Munoz's claims fail as a matter of law.  Shortly thereafter, Munoz filed a pleading with the Clerk entitled "Second Amended Petition" attempting to amend her Complaint again and add entirely new claims to her lawsuit including claims of "Personal Injury Tort / Negligence / Tort / Fraudulent Concealment" arising from an alleged allergic reaction she had from a vaccine she received at Seton, "Unlawful Workers Compensation Retaliation" and "Spoliation of Evidence." See Dkt. 61.  In response, Defendants filed a "Motion for Summary Judgment or in the Alternative to Deny Leave to File or to Strike Second Amended Petition or in the Alternative to Grant Summary Judgment for Defendants."  Dkt. # 70.  Munoz has also filed her own Cross-Motion for Summary Judgment (Dkt. # 70).  The Court will now address each of these Motions.

### III.  Standard of Review

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial.  The nonmoving party must then "go beyond the pleadings," and by affidavits or other competent summary judgment evidence cite "specific facts" that show there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  But a district court may not grant a motion for summary judgment merely because it is unopposed.  *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

## IV.   Motion to Strike "Plaintiff's Second Amended Petition"

One month after Defendants moved for summary judgment,  Munoz filed a pleading entitled "Second[3] Amended Petition," in which she attempts to amend her Complaint once again, this time to add entirely new claims to her lawsuit including claims of "Personal Injury Tort/Negligence/Tort/Fraudulent Concealment" arising from an alleged allergic reaction she had from a vaccine she received at Seton, "Unlawful Workers Compensation Retaliation" and "Spoliation of Evidence." See Dkt. 61.  Because Munoz's "Second Amended Petition" fails to restate her original discrimination and disability claims, Defendants argue that Munoz has abandoned all of her previous claims and thus moves for judgment on those claims.  In the alternative, Defendants argue that the Court should strike the "Second Amended Petition" because Munoz failed to seek

---

[3]Munoz should have entitled her pleading "Third Amended Complaint" since she has filed two previous Amended Complaints in this case.  See Dkt. # 19 (First Amended Complaint) and Dkt. # 24 (Second Amended Complaint).

leave of court to file the pleading and the deadline to file amended pleadings expired on March 30, 2012.

Because Munoz has clarified in her response (Dkt. # 73) to the Defendants' Motion that she has not abandoned any of her claims in this lawsuit, Defendants' Motion to dismiss these claims on the grounds of abandonment should be denied.  However, the Court agrees with Defendants that Munoz's Second Amended Petition should be stricken from the record in this case.

Munoz has failed to comply with Rule 15(a)(2)'s requirement that she seek the court's leave or the defendants' consent before filing her amended complaint.  As already noted, Munoz has filed two previous Amended Complaints in this case.  In addition, Munoz is attempting to file this latest Complaint eight months after the deadline contained in the Amended Scheduling Order in this case. In addition, this case is set before the District Court for a Pre-Trial Conference in one month. Permitting Munoz to amend her Complaint for a third time at this late stage of the case and after Defendants have moved for summary judgment would clearly prejudice Defendants in this case and cause undue delay.  *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005) ("Among the permissible bases for denial of a motion to amend are 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "While leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case," *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987), and "a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim," *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003).  Based upon the foregoing, the Court recommends that the District Court **STRIKE** "Plaintiff's Second Amended Petition" (Dkt. # 61).

**V.  Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on all of Munoz's claims in this lawsuit.  Munoz's remaining claims in this lawsuit include the following: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"); (2) ethnicity/national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the TCHRA; (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the TCHRA; (4) violation of the anti-retaliation provision of the Family Medical Leave Act ("FMLA"); and (5) retaliation under each of the corresponding statutes listed above.  See Plaintiff's Second Amended Complaint ("Complaint") (Dkt. # 24).

**A.      Is Ascension a Proper Party?**

In addition to Seton Health Care d/b/a Seton Health Network, Seton Northwest Hospital, Seton Southwest Hospital, Munoz also named Ascension Health as a Defendant in this case. According to Munoz, Ascension Health "is a national health system and the parent corporation serving as the corporate member or de facto supervisor of certain healthcare organizations, including Defendant Seton."  Complaint at  ¶ 6.  However, Defendants contend that Ascension Health was never Munoz's employer and thus is not a proper party to this lawsuit.  Defendants emphasize that Munoz never received a paycheck from Ascension and Ascension never took part or participated in any adverse employment action against Munoz.  Thus, Defendants contend that Ascension was not Munoz's employer and thus should be dismissed from this employment discrimination lawsuit.

Munoz has failed to come forward with any summary judgment evidence showing that she was ever employed by Ascension or that Ascension had anything to do with any alleged adverse employment action in this case.  Accordingly, Munoz has failed to show that Ascension is a proper party to this employment discrimination lawsuit since she has not come forward with summary

judgment evidence showing that Ascension was her employer.  *See McCall v. Southwest Airlines Co.*, 661 F. Supp.2d 647, 656 (N.D. Tex. 2009) (holding that entity was not plaintiff's employer and did not discharge her, and thus was not a proper party to retaliatory discharge claim);  *Williams v. AT & T, Inc.*, 2009 WL 938495 at * 1 (S.D. Tex. 2009) (granting AT&T, Inc.'s motion for summary judgment in ADA and FMLA case on the basis that AT&T was not a proper party because plaintiff's employer was, in fact, Southwestern Bell Telephone);  *Ronsonet v. Carroll*, 113 F. Supp.2d 1009, (S.D. Miss. 2000) (dismissing claims against HUD "[b]ecause Title VII and ADEA claims can only be maintained against an employer and HUD was not the plaintiff's employer.").  Because Ascension Health is not a proper party to this employment discrimination and retaliation lawsuit, it should be dismissed from this lawsuit.

## B.    The ADA and Reasonable Accommodations

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" 42 U.S.C. § 12112(b)(5)(A).  A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8).

To decide whether summary judgment is appropriate in this case, the Court must begin with the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, the plaintiff must first establish a prima facie case of discrimination.  *Id.* at 802. If the plaintiff succeeds in establishing a prima facie case, then the employer must articulate a

legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets its burden, then the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for unlawful discrimination. *Id.* at 804. A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146–48 (2000) (ADEA case); see also, *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009) (citing *Reeves* for the proposition that McDonnell Douglas applies in ADA discrimination cases).

To prevail on her ADA claim, Munoz a plaintiff must prove that (1) she has a disability; (2) she is "qualified" for the job; and (3) an adverse employment decision was made solely because of her disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996). It is undisputed that Munoz has a disability. Accordingly, Munoz need only prove that the second and third prongs of the prima facie case.

### The 2009 Job Transfer

Munoz first argues that Defendants discriminated against her by transferring her from Outpatient Services to the ER in August 2009. Munoz contends that her transfer to the ER "required Plaintiff to exercise new duties incompatible with her disability, including, among other things, mobility activities that exceeded Plaintiff's safe range for physical capacity." In addition, Munoz contends that the job transfer subjected her to "high-risk exposure to diseases that were potentially lethal to Plaintiff," a risk she contends was known to Defendants since they were aware that her infusion therapy treatments caused her to have a compromised immune system.

An adverse employment action consists of " ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002). A purely lateral transfer does not qualify as an ultimate employment decision. *Burger v. Cen. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999); see also, *Brown v. Lester E. Cox*

*Med. Ctrs.*, 286 F.3d 1040, 1045–46 (8th Cir. 2002) ("[A] transfer from one job to another is not an

adverse employment action if it involves only minor changes in the employee's working conditions

with no reduction in pay or benefits").  The Fifth Circuit has noted that

> [our] precedent establishes that in cases where the evidence produces no objective
> showing of a loss in compensation, duties, or benefits, but rather solely establishes
> that a plaintiff was transferred from a prestigious and desirable position to another
> position, that evidence is insufficient to establish an adverse employment action.

*Felton*, 315 F.3d at 283.  In *Burger*, the Court adopted Chief Judge Posner's reasoning for finding

that a lateral transfer is not an ultimate employment decision:

> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion
> in form or substance, cannot rise to the level of a materially adverse employment
> action. A transfer involving no reduction in pay and no more than a minor change in
> working conditions will not do, either. Otherwise every trivial personnel action that
> an irritable, chip-on-the-shoulder employee did not like would form the basis of a
> discrimination suit. The Equal Employment Opportunity Commission, already
> staggering under an avalanche of filings too heavy for it to cope with, would be
> crushed, and serious complaints would be lost among the trivial.

*Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (C.J. Posner)).

In order for a transfer to constitute an adverse employment action, it must be "objectively worse"

than the original position.  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). "[T]he

focus is on the objective qualities of the positions, rather than an employee's subjective preference

for one position over another. That subjective preference, alone, is an insufficient basis for finding

an adverse employment action." *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 771 n. 8 (5th

Cir. 2001).

      The undisputed evidence in this case establishes that the ER PAR position had the same job

title, benefits, duties, and pay as the Outpatient PAR position.  The fact that Munoz preferred her old

position in Outpatient Services does not make the ER position objectively worse. See *Cooper v.

United Parcel Service, Inc.*, 368 Fed. Appx. 469, 2010 WL 610047 at * 4 (5th Cir. 2010) (holding

that employee's transfer was not adverse employment action where new job had same title and

benefits despite fact that employee was unhappy with transfer due to increased commute). Although Defendants did not grant Munoz's request to be transferred back to another department, they did provide Munoz with an N95 surgical mask to deal with her concerns about exposure to infectious diseases. Defendants point out that Munoz's doctor never opined that the mask was not a sufficient alternative to moving Munoz out of the ER. See Munoz Dep. at p. 237-39. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471(5th Cir. 2009).

Even if Munoz had established that her transfer was an adverse employment action, she has failed to show that Defendants' proffered legitimate, non-retaliatory reason for transferring her to the ER was a pretext for discrimination. Defendants contend that Munoz was transferred because she could not adequately handle the more complex duties at the front desk of the hospital. They contend that the ER position was simpler to manage and a better fit for her skill level and ability. Munoz has failed to come forward with any evidence showing that Defendants' proffered reason was a pretext for retaliation. Accordingly, Munoz's transfer claim fails.

### Munoz's Request to Transfer back to Outpatient Services

Munoz further contends that Defendants discriminated against her by denying her request to transfer her back to her Outpatient Services position. Munoz contends that the request would have been a reasonable accommodation to her disability. "Refusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision." *Burger,* 168 F.3d at 879. Moreover, an employee's complaint that he was not transferred to a certain position by itself "is not sufficient to establish a claim for discrimination." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622 (5th Cir. 2000). "The ADA does not require an employer to give an employee with a disability his job of choice especially when there are qualified individuals who desire the same position." *Id*. at 622-23; see also, *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("The

ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation"). Thus, a "disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." *Jenkins v. Cleco Power*, LLC, 487 F.3d 309, 315 (5th Cir. 2007). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to give what it does not have." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998). "The plaintiff bears the burden of proving that an available position exists that she was qualified for and could, with reasonable accommodations, perform." *Jenkins*, 487 F.3d at 315.

Munoz has failed to come forward with any summary judgment evidence showing that there was a position open and available in Outpatient, or that she was actually qualified for such a position. Moreover, she has failed to come forward with any evidence rebutting Defendants' arguments that she had performed poorly when she had the position in Outpatient services. *See Cooper*, 2010 WL 610047 at * 6 (granting summary judgment on failure to accommodate claim where plaintiff could not show that he was qualified for job he sought or that position was actually vacant); *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 839 (5th Cir. 1999) (police officer was not qualified for position of evidence technician, and city thus did not violate ADA by failing to transfer him to such position as accommodation for his diabetic neuropathy).

Although Defendants denied Munoz's transfer request, the evidence shows that Defendants made numerous other accommodations for Munoz. For example, Defendants granted Munoz's request to work no more than 8 hours during a shift, instead of the usual 12 hours. Defendants also permitted Munoz to take time off to attend medical appointments. In addition, Defendants provided Munoz with an N95 respirator surgical mask to address Munoz's concerns about exposure to infectious diseases. Defendants argue that there is no evidence suggesting that Munoz could not

have safely performed her duties in the ER with the mask.  Defendants emphasize that the only accommodation that they did not provide Munoz with was her request to move back to Outpatient Services.

Munoz has failed to come forward with any evidence showing that the Defendants' decision not to transfer her to Outpatient was motivated by discrimination because of her disability.  Even if the Court found that the transfer was unfair, it would still not be enough to show discrimination since the ADA gives Munoz "a claim for discriminatory action and not unfair treatment."  *Allen*, 204 F.3d at 623.  Thus, without evidence to demonstrate that the Defendants discriminated against Munoz by denying her transfer request on the basis of her disability, Munoz fails to satisfy her burden to overcome summary judgment.  *See Id.*

### Munoz's termination

Munoz next alleges that she was terminated because of her disability.  As previously noted, Munoz took full time FMLA leave on February 2, 2010, due to her disability.  On May 31, 2010, Defendants sent Munoz a letter informing her that her twelve weeks of FMLA leave had expired and informed her that she would have to apply for a formal leave of absence if she desired to remain on leave.  See Ex. 1 to Defendant's MSJ.  Although Munoz did not apply for such leave, Defendants did grant her more than five months of leave beyond the expiration of her FMLA leave.  However, Munoz never returned to work and Defendants terminated her in October 2010.

The summary judgment evidence demonstrates that Munoz was not qualified to perform the essential functions of her job at the time she was terminated because she was unable to return to work.  "An individual is not qualified for his position if he is unable to come to work." *Mazza v. Bratton*, 108 F. Supp.2d 167, 175 (E.D.N.Y.  2000), *cert. denied*, 534 U.S. 887 (2001).  "[I]t is axiomatic that a person who cannot perform any of the functions of a job, with or without reasonable accommodation, cannot, as a matter of law, be considered 'otherwise qualified' under the ADA."

14

*Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 903 (8th Cir.), *cert. denied*, 130 S.Ct. 243 (2009). Munoz herself testified that she became totally disabled and unable to return to work in February 2010. See Munoz Dep. at 250:15-250:17, Ex. 30 to Defendants' MSJ. Munoz's physician also completed a disability form stating that Munoz became disabled in late February 2010. See Ex. 20 to Defendants' MSJ. Because Munoz could not return to work at the time she was terminated, she has failed to show that she was otherwise qualified for her position. *See Peyton*, 561 F.3d at 903 (plaintiff was not qualified where she conceded that her illness prevented her from performing her job as a store manager during the six months of chemotherapy); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (finding that plaintiff was not qualified at the time he was terminated since he could not return to work since he was recuperating from an ankle injury); *Crow v. McElroy Coal Co.*, 290 F. Supp.2d 693, 696-97 (N.D.W.Va. 2003) (plaintiff who was not released to work from his doctor failed to show that he was a qualified individual with a disability).

Despite Munoz's desire, she was not entitled to remain on leave indefinitely. As the Fourth Circuit has explained:

> Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question....[R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected...

*Rogers*, 87 F.3d at 759-60 (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). Thus, "the ADA does not require that a position be kept 'open indefinitely' while an employee convalesces." *Mazza*, 108 F. Supp.2d at 175. Based upon the foregoing, Munoz has failed to demonstrate a prima facie case of disability discrimination under the ADA.

**C.      Discrimination Claims under Title VII, the ADEA and TCHRA[4]**

Title VII prohibits employers from discriminating based on an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where, as here, a plaintiff only relies on circumstantial evidence, the Court must apply the familiar framework from *McDonnell Douglas* for both Title VII and ADEA claims. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (Title VII); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (ADEA). Pursuant to that framework, Munoz first must make a prima facie case of discrimination based on age or race. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). To establish a prima facie case, Munoz must show that she: (1) was a member of a protected group; (2) was qualified for the position in question; (3) was subjected to an adverse employment action; and (4) received less favorable treatment due to her membership in the protected class than did other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). As to her age discrimination claim, Munoz can satisfy the fourth prong by showing that "she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age." *Rachid*, 376 F.3d at 309 (citation omitted).

---

[4]Because the TCHRA is intended to correlate with Title VII, the same analysis applies to the state and federal claims. *See Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

If Munoz makes a prima facie case, the burden then shifts to Defendants to "articulate a legitimate, non-discriminatory reason for firing" her. *Vaughn*, 665 F.3d at 636. If they do so, Munoz must, as to her Title VII claim, "offer sufficient evidence to create a genuine issue of material fact either (1) that Defendants' reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that Defendants' reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [Munoz'] protected characteristic (mixed-motives alternative)." *Id.* (citation omitted). As to her ADEA claim, Munoz "may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss*, 610 F.3d at 922 (internal quotation marks and citation omitted). Unlike Title VII, it is insufficient under the ADEA to show that discrimination was a motivating factor; Munoz must show that age was the "but for" cause of the challenged adverse employment action. *Id.* at 928 (citing *Gross v. FBL Fin. Servs.*, Inc., 557 U.S. 167, 173–78 (2009)).

**Job Transfer**

Munoz cannot make out a prima facie case of discrimination under Title VII, the TCHRA or the ADEA with regard to her claim that her job transfer was motivated by her age and ethnicity because as discussed in detail above, the transfer was purely lateral and thus was not an adverse employment action. *See Cooper*, 2010 WL 6100477 at * 7 (transfer was not an adverse employment action under Title VII since job had same title and commute); *McNealy v. Emerson Elec. Co.*, 2005 WL 86503 at *4 (5th Cir. Jan. 17, 2005) ("It is well-established that a lateral transfer cannot form the basis of an adverse employment action" under Title VII and ADEA). Accordingly, Munoz has failed to demonstrate a prima facie case of discrimination under Title VII, the TCHRA or the ADEA, and Defendants are thus entitled to summary judgment with regard to this claim.

**Termination**

Munoz also alleges that she was terminated because of her age and ethnicity in violation of Title VII, the TCHRA and the ADEA. Like her ADA termination claim, Munoz cannot show that she was qualified to perform her job since she did not return to work. "If a Title VII plaintiff is physically unable to perform the job applied for, he is not qualified for the position." *Godwin v. Pier 1 Imports (US), Inc.*, 2000 WL 1029110 at *3 (5th Cir. 2000). Similarly, "attendance is an essential job function without which one cannot be considered qualified to perform most jobs." *Comeaux-Bisor v. YMCA of Greater Houston*, 2008 WL 3889976 at * 3 (5th Cir. 2008) (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998)). Munioz's failure to report to work rendered her unqualified for her position, and accordingly unable to meet her initial burden of establishing a prima facie case of discrimination under Title VII, the TCHRA and the ADEA. *See Comeaux-Bisor*, 2008 WL 3889976 at * 3 (holding that plaintiff could not make out prima facie case under Title VII since it was undisputed that she did not return to work); *Holtzclaw v. DSC Commc'n Corp.*, 255 F.3d 254, 260-61(5th Cir. 2001) (finding that plaintiff could not make out prima facie ADEA claim where he was unable to work at all, and who thus could not show that he was qualified for position); *Patterson v. Celadon Trucking Serv., Inc.*, 2010 WL 538263 at * 5 (W.D. Tex. Feb. 4, 2010 (granting summary judgment on TCHRA claim where plaintiff couldn't show that he was qualified for the position).

**Access to Training**

Munoz alleges that Defendants further discriminated against her because of her age and ethnicity by denying her request for re-certification training for birth certificate processing. Defendants emphasize that they only sent employees to such training if their job required them to process birth certificates. Defendants contend that they did not send Munoz to such training because birth certificate processing was not part of her day to day job duties.

18

A refusal to train is not an adverse employment action under Title VII or the ADEA. *Hollimon v. Potter*, 2010 WL 338020 at * 2 (5th Cir. 2010) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406–07 (5th Cir. 1999)); *Martin v. Lennox Intern. Inc.*, 2009 WL 2134908 at * 2 (5th Cir. 2009).  Munoz has failed to show that a denial of the birth certificate training would "tend to affect" her employment status or benefits in any way.  *Shackelford*, 190 F.3d at 407.  Accordingly, Munoz has failed to show that she was denied an adverse employment action with regard to the birth certificate training.  *See e.g.*, *Martin*, 2009 WL 2134908 at * 2 (denial of training was not an adverse employment action under ADEA where there was no evidence that denial of the training resulted in change in employment status, benefits or responsibilities);  *Earle v. Aramark Corp.*, 247 Fed. Appx. 519, 523 (5th Cir. 2007) (holding that being denied access to training and leadership courses was not considered adverse employment decisions for purposes of sex discrimination).  Therefore, Defendants are entitled to summary judgment with regard to her failure to train claim.

**D.     Munoz's Retaliation Claim**

Lastly, Munoz alleges that Defendants retaliated against her for filing a charge of discrimination by firing her.  Because the *McDonnell Douglas* framework also applies to retaliation cases, Munoz must first make a prima facie showing of retaliation. *See Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000). To establish a prima facie case of retaliation under Title VII, the ADA, the TCHRA, the ADEA or FMLA, Munoz must prove: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action.  *Jenkins*, 487 F.3d 309, 317 (5th Cir. 2007) (ADA); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (Title VII); *Garner v. Chevron Phillips Chemical Co.*, 834 F. Supp. 2d 528, 543 (S.D. Tex. 2011) (FMLA).

It is undisputed that Plaintiff has met the first two prongs.  Thus, the Court need only address the third prong. As the Fifth Circuit has stated, "[t]he ultimate determination in an unlawful

retaliation case is whether the conduct protected by [the statute] was a 'but for' cause of the adverse employment decision." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996).  "Temporal proximity is one indicia of a prima facie causal link, and where it is the sole evidence, the temporal proximity must be "'very close.'" *Hypolite v. City of Houston, Tex.*, 2012 WL 4858198 at * 7 (5th Cir. 2012) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  The Fifth Circuit has found that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Id.*  In this case, Munoz filed her charge of discrimination in August 2009 and was terminated more than one year later – in October 2010. Thus, the time period between Munoz's charge of discrimination and her termination is insufficient by itself to find a causal link in this case.  *See Lasater v. Texas A & M University-Commerce*, 2012 WL 5246602 at * 6 (5th Cir. 2012) (finding employee failed to establish "but for" causal nexus between his reporting of misconduct and his termination when his termination occurred more than a year after protected activity).

Even if the Court assumes for the purposes of argument that Munoz had established a prima facie case of retaliation, Defendants have put forth a legitimate, nondiscriminatory reason for the termination, which is that Munoz was administratively terminated because Munoz had exhausted all of her FMLA leave and failed to request a regular leave of absence.  Munoz has failed to come forward with any evidence showing that Defendants' proffered reason is pretextual.  *See Jenkins*, 487 F.3d at 317 (finding that plaintiff failed to show pretext where plaintiff failed to point to any evidence that showed reason was pretextual).  Munoz cannot show pretext simply by showing that the Defendants knew of her complaint of discrimination and then terminated her.  Munoz fails to dispute that she was terminated after her FMLA leave ran out and after she failed to submit her paper work to obtain another leave of absence.  Other than her subjective belief, Munoz has failed to come forward with any evidence to show that she was terminated for filing claims of discrimination.  *See*

*Cooper,* 2010 WL 610047 at * 7 (holding that plaintiff failed to show pretext where he was fired from being absent from work over a year, per the terms of the Income Protection Plan and only pointed to his subjective belief that he was discriminated against); *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996) ("An employee's subjective beliefs are merely conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge action"). Because Munoz has failed to offer any competent evidence of retaliatory termination, Defendants are entitled to summary judgment with retard to Munoz's retaliation claim.

Because there is no genuine dispute as to any material fact in this case, Defendants are entitled to summary judgment with regard to all of Plaintiff's claims in this case.

## VI.  Plaintiff's Cross-Motion for Summary Judgment

In Plaintiff's Response to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment, Plaintiff fails to produce any summary judgment evidence, beyond her own subjective belief, that any of Seton's conduct was based on her disability, sex, ethnicity or age. In the Fifth Circuit, it is clear that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Accordingly, Plaintiff's Cross-Motion for Summary Judgment should be denied.

## VII.  RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Dkt. # 57) in its entirety and dismiss all of Plaintiff's claims in this case. It is **FURTHER RECOMMENDED** that the District Court **DENY** Plaintiff's Cross Motion for Summary Judgment (Dkt. # 73).

## VIII.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of March, 2013.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE